UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA RINGENBACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21 CV 1400 CDP |
| | ) | |
| DIRECTV, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff alleges that she was the victim of identity theft by an unknown third party who used her information to open (and then not pay) an account with DirecTV.  DirecTV is owned by AT&T and the fraudulent account was opened with AT&T.[1]  Shortly after the account was opened, AT&T notified plaintiff of the fraud and told her that she "will have no responsibility for that account."  ECF 120-2.  Despite this representation, AT&T then attempted to collect this debt from plaintiff by using debt collectors and reporting the debt on plaintiff's credit report. This lawsuit followed.  Plaintiff sued DirectTV, the debt collectors, and the credit reporting agencies (CRAs) for violations of federal law.[2]  Plaintiff settled and

---

[1] AT&T was originally named as a defendant, but without objection plaintiff substituted DirecTV for AT&T as a defendant.  The parties refer to the original creditor as AT&T, so to avoid confusion I will do the same.

[2] She also brought a state law consumer claim against DirectTV.

dismissed her claims against all defendants except one of the debt collectors, I.C. System, Inc.  In her amended complaint, plaintiff alleges that defendant I.C. System, Inc. negligently and willfully violated the Fair Credit Reporting Act (FCRA) (Counts III and IV) and the Fair Debt Collection Practices Act (FDCPA) (Count VI)[3] in connection with its attempts to collect on the debt.

Plaintiff moves for partial summary judgment on the issues of liability under the FCRA and FDCPA, claiming the jury should decide whether defendant willfully or negligently violated the FCRA and the amount of damages.  For its part, defendant argues that it is entitled to summary judgment on all counts asserted against it in the amended complaint.  As neither party is entitled to judgment as a matter of law, the motions for summary judgment will be denied for the reasons set out below.

### Standards Governing Summary Judgment

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3] Count VI is improperly denominated as Count V in the amended complaint.  ECF 44.

"Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## Background Facts

Plaintiff alleges that in January of 2020, an unknown party in Texas used her identity to open an account for DirecTV (AT&T account number 302469666). ECF 123-1.  Shortly thereafter, AT&T discovered the account was the result of identity theft and notified plaintiff of this fact by letter dated February 7, 2020. ECF 120-2.  The letter advises plaintiff that she has "no responsibility for that account."  ECF 120-2.  The letter recommends that plaintiff consult the Federal Trade Commission's identity theft resources.  ECF 120-2.

Defendant I.C. Systems disputes that the account was the result of fraud and is not a valid debt.[4]

Despite telling plaintiff that she was not responsible for the account, AT&T tried to collect the balance due and owing on the account from plaintiff.  ECF 120-1.  In February of 2021, AT&T sent the account to defendant for collection.  ECF 120-4.  Defendant sent collection letters to plaintiff at the Texas address that were never received by plaintiff.  ECF 120-4, 120-5.  Defendant also reported to the CRAs Trans Union and Experian that plaintiff owed a debt for the account in the amount of $934.  ECF 123-2, ECF 123-3.

Plaintiff alleges that she contacted defendant by telephone in the spring of 2021 and told them that she was a victim of identity theft, had a police report, and did not owe the debt.  This fact is disputed as defendant denies receiving a call from plaintiff and there is no written record of defendant ever receiving a call from plaintiff.

What is not disputed, however, is that the CRAs (Trans Union and Experian) received a letter from plaintiff which stated the following:

> I have an inaccurate account listed on my reports: an open collection account from IC Systems for AT&T.  I do not owe them anything.  See my attached ID.  Contact AT&T and IC Systems US Bank credit reporting and billing department and verify that this is not mine [sic] account and I do not owe

---

[4] In its summary judgment brief, defendant states that "[defendant] does not concede that plaintiff can prove or has proven her account was fraudulent or otherwise not valid."  ECF 132 at 19 n.8.

them anything.  Request a copy of my account history, payments, address and notes from the to verify this settlement.  Provide me copies of all account notes, statements, itemization, signed documents, payment history and any other correspondence that was received and reviewed during your investigation.  Let me also know the verification method used and who you spoke to, what did they say and what did they review.  You could also delete the this IC Systems.  If not, then verify this account.

ECF 123-2, ECF 123-3.  TransUnion received plaintiff's dispute letter on July 8, 2021, and Experian received her dispute letter on July 6, 2021.  ECF 123-2, ECF 123-3.  Plaintiff attached a copy of her driver's license to the letters but did not provide any police reports indicating that she was a victim of identity theft.[5]  ECF 123-2, ECF 123-3.

The CRAs notified defendant of plaintiff's dispute on July 12, 2021 through an Automated Consumer Dispute Verification (ACDV) system.  ECF 123-3, 123-2.  The ACDVs describe the "consumer dispute" as "not his/hers."  ECF123-2, 123-3.  The ACDVs request that defendant provide or confirm "complete ID" and attach plaintiff's dispute letter (which includes a copy of her driver's license).  ECF 123-2, 123-3.  The ACDV from TransUnion additionally states: "Claims company will delete.  Verify all Account Information."  ECF 123-2.  The CRAs, not plaintiff, generated and sent the ACDVs to defendant.

---

[5] Plaintiff has not provided a copy of the police report as evidence in support of her summary judgment motion.

Defendant used an automated system to "verify" plaintiff's account information, then reported back to the CRAs the next day (July 13, 2021) that the "disputed information [is] accurate."  ECF 123-2, 123-3.  Defendant claims that it verified the account as accurate by comparing four "data points" from the information it had and the information provided on the ACDV.  Those claimed data points were plaintiff's first name, her middle name, her last name, and her social security number.  This fact is disputed as plaintiff contends that AT&T did not have or provide defendant with her middle name.  All correspondence to plaintiff from AT&T uses only her first and last names, never a middle name or initial.

Defendant apparently has access to some of AT&T's records, but the parties dispute the nature and extent of records available for review.  What is not disputed, however, is that defendant never actually checked any of AT&T's internal records to investigate plaintiff's dispute.

According to defendant, the "not mine" description on the ACDV did not (and would not) flag plaintiff's dispute as one involving identity fraud.  Defendant contends it was unaware that plaintiff claimed she was the victim of identity theft or fraud.  Defendant argues that plaintiff's letter does not indicate a dispute involving identity fraud.  Defendant contends that had plaintiff's ACDV indicated

"fraud" instead of "not mine," a person would have reviewed the file and verified the accuracy of the information.

Despite never being reviewed by a person, defendant's ACDV response states that "Crystal Rolfzen" was the "authorized verifier" of the information.  ECF 123-3, 123-3.  Ms. Rolfzen has not worked for defendant since 2018.  She helped defendant implement the automated review system, but defendant has been unable to explain why her name appears on plaintiff's ACDVs.

AT&T recalled the debt from plaintiff on August 3, 2021 for reasons unrelated to plaintiff's dispute.  Defendant sent the request to delete the reporting to the CRAs on August 8, 2021.

Plaintiff alleges she was denied a loan, paid increased insurance premiums, and suffered emotional distress and damage to her credit worthiness during the period defendant was reporting her debt and insisting it was valid.  She seeks statutory, actual and punitive damages.

## Discussion

### FCRA Claims

Plaintiff alleges that defendant willfully or negligently violated § 1681s-2(b) of the FCRA by failing to conduct a reasonable investigation once notified by the CRAs that she disputed the debt.

Section 1681s-2(b) of the FCRA outlines the duties defendant has as a

furnisher of information upon notice of a dispute from a CRA as follows:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> (i) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).  A prevailing plaintiff may recover statutory and/or actual

damages,[6] costs, and reasonable attorney's fees for failure to comply with the

---

[6] Actual damages are available for negligent noncompliance (15 U.S.C. § 1681o), and statutory damages are available for willful noncompliance (15 U.S.C. § 1681n).

requirements of § 1681s-2(b), as well as punitive damages for willful noncompliance.  *See* 15 U.S.C. § 1681o, § 1681n.

Under 15 U.S.C. § 1681s-2(b), once defendant received notice of plaintiff's dispute from a CRA, "it was required to conduct a reasonable investigation of its records to determine whether the disputed information could be verified." *Meyer v. F.I.A. Card Servs., N.A.*, 780 F. Supp. 2d 879, 883 (D. Minn. 2011) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)) (cleaned up). An investigation of this sort requires "some degree of careful inquiry by creditors." *Meyer*, 780 F. Supp. 2d at 883 (quoting *Johnson*, 357 F.3d at 430). "[T]he investigation an information furnisher undertakes must be a reasonable one." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (collecting cases).   A reasonable investigation "is one that a reasonably prudent person would undertake under the circumstances." *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (cleaned up).  The standard is an objective one, and the burden of showing the investigation was unreasonable rests with the plaintiff. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).

"Because a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b) arises when it receives a notice of dispute from a CRA, it need investigate only what it learned about the nature of the dispute from the description in the CRA's notice of dispute." *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905,

908 (8th Cir. 2011) (cleaned up).  Therefore, "how thorough an investigation must be to be reasonable turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."  *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (cleaned up).  "For instance, a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute."  *Chiang*, 595 F.3d at 38.  "The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (citation omitted).

"Whether a defendant's investigation is reasonable is a factual question normally reserved for trial," but summary judgment may be appropriate "if the reasonableness [or unreasonableness] of the defendant's procedures is beyond question."  *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (alteration added).

The record here contains numerous material factual disputes which preclude entry of summary judgment in favor of either party on the issue of the reasonableness of defendant's investigation.   Therefore, I will deny plaintiff's motion for partial summary judgment and defendant's motion for summary judgment on plaintiff's FCRA claims.

Whether the information provided to defendant by the CRAs, which included plaintiff's dispute letter, her driver's license, and the categorization of the dispute as "not mine" were sufficient to inform defendant of the nature of plaintiff's dispute as one involving identity theft is a hotly contested factual issue at the crux of this case.  Although defendant may believe that "not mine" does not mean "identity theft," there is a genuine dispute for trial as to whether this conclusion and defendant's corresponding procedures to investigate this dispute were reasonable under the circumstances of this case.

Although defendant argues that plaintiff was ultimately not damaged because the account was eventually recalled, this argument is unavailing because defendant chose to investigate plaintiff's dispute through an automated system and report back that the account information was accurate one day after receiving the ACDV.  That the account was later recalled by AT&T for reasons unrelated to plaintiff's dispute does not obviate either defendant's potential liability under the statute[7] or plaintiff's damages, which she alleges include being denied a loan,

---

[7] Defendant argues that its liability is foreclosed under the FCRA because the account was deleted within 30 days of it receiving notice of the dispute from the CRAs.  This argument fails as the statute actually requires a furnisher's investigation to be completed prior to 30 days of the *credit reporting agency's* receipt of the consumer's dispute. § 1681s-2(b)(2); *see also* § 1681i(a)(1); *Green v. Americollect, Inc.*, Case No. 4:20CV1096 SRC, 2021 WL 2665937, at *3 (E.D. Mo. June 29, 2021).  As the CRAs received plaintiff's dispute letter on July 6, 2021 and July 8, 2021, respectively, the deletion of plaintiff's account occurred outside the 30-day window for both CRAs.

raised insurance premiums, emotional distress, and damage to credit worthiness, all of which she claims occurred during the period defendant reported the account was accurate after investigation.  Whether some or all of these claimed damages are actually attributable to the actions of the defendant is another hotly contested factual issue which can only be resolved by a jury after hearing all the evidence and making appropriate credibility determinations.  Accordingly, I will deny summary judgment on plaintiff's FCRA claims (Counts III and IV).

FDCPA Claims

Plaintiff alleges that defendant violated the FDCPA by misrepresenting the character, amount, or legal status of the alleged debt, communicating to a CRA information which it knew or should have known was false, and using false or misleading misrepresentations in an attempt to collect a debt, in violation of 15 U.S.C. § 1692e, 1692e(2)(A), and 1692e(8).  According to plaintiff, defendant's liability is undisputed.  This argument, however, ignores the numerous factual disputes regarding the validity of the underlying debt, whether plaintiff actually contacted defendant by telephone and informed defendant that she was the victim of identity theft, and the nature and circumstances of the investigation conducted

---

Moreover, none of the cases cited by defendant address the situation where the defendant actually reported the account was accurate within that 30-day window but then attempted to evade liability after the account was subsequently deleted because the debtor recalled the account for reasons unrelated to the dispute.

into plaintiff's dispute of the underlying debt.  As with the FCRA claims, these factual disputes also preclude summary judgment on the FDCPA claims.

The same is true regarding defendant's contention that it is entitled to summary judgment on the FDCPA claim under the bona fide error defense.  This statutory affirmative defense permits a debt collector to avoid liability if "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  "To establish the bona fide error defense, a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error."  *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008).  This is a "fact-intensive inquiry," *see id.*, and in this case the facts regarding how the investigation was conducted (i.e., whether four data points were compared), whether defendant had access to AT&T's internal records (including its letter to plaintiff that "she will have no responsibility for the account), as well as the reasonableness of using an automated system in situations where the alleged debtor is claiming the account is "not mine" because of identity theft are hotly contested and must be decided by a jury, not by this Court on summary judgment.

Accordingly,

13

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary

judgment [119] and defendant's motion for summary judgment [131] are denied.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2023.

14